# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 21-0394V

| | |
|---|---|
| EVELYN VALDEZ,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: February 28, 2024 |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, for Petitioner.

*Zoe Wade*, U.S. Department of Justice, Washington, DC, for Respondent.

**RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES**[1]

On January 8, 2021, Evelyn Valdez filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), which she amended on April 22, 2021. Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on October 4, 2019. Amended Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

For the reasons described below, I find Petitioner entitled to compensation, and I award damages in the amount of **$35,000.00** for actual pain and suffering.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Relevant Procedural History

On March 7, 2022, I ordered that Petitioner would be allowed to seek a ruling on the record if Respondent had not determined how he intended to proceed in this case by June 21, 2022 (over a year after the case was activated). Scheduling Order (NON-PDF), issued March 7, 2022. On June 15, 2022, Respondent filed a status report stating that he was amenable to informal resolution of Petitioner's claim (ECF No. 24). But Petitioner nevertheless filed a motion for a ruling on the record, addressing both her entitlement to compensation and damages on June 22, 2022 (ECF No. 25).

Respondent filed his Rule 4(c) Report and response to Petitioner's motion on January 6, 2023 (ECF No. 31), and Petitioner replied a week later (ECF No. 32). On January 23, 2024, Petitioner filed a status report stating that she incurred some out of pocket expenses but does not have substantiating documentation, and thus seeks compensation only for pain and suffering (ECF No. 35).

On February 9, 2024, I proposed scheduling this case for resolution at a brief "motions day" hearing, and directed the parties to respond concerning their amenability and availability for such a hearing (ECF No. 36). But the parties did not agree as to the utility of such a means of resolution, leaving me to resolve the motion on the papers (ECF No. 37).

## II. Factual Evidence

### A. Medical Records

Petitioner received a flu vaccine intramuscularly in her left arm on October 4, 2019. Ex. 1 at 3. Two and a half months later (December 18, 2019), she saw nurse practitioner ("NP") Jesus Arballo at the Patel Medical Clinic for left arm pain. Ex. 3 at 7. Petitioner stated that her pain and muscle weakness had been present since her vaccination, and that the pain radiated "from shoulder down towards her upper arm and continue[d] down." *Id*. She was assessed with pain in her left arm, shoulder, and forearm, and given a Medrol dose pack and diclofenac. *Id*. at 8. NP Arballo explained it was "likely due to tendonitis likely due to vaccine," and planned to treat conservatively and monitor for worsening of symptoms. *Id*. at 9. An x-ray done on January 7, 2020 was negative. *Id*. at 14.

On January 13, 2020, Petitioner returned to NP Arballo to follow up on her left arm pain. Ex. 3 at 4. Her symptoms had improved after the Medrol dose pack, but she was still experiencing discomfort, including pain "from what appears to be the biceps tendon . . . down toward her forearm." *Id*. She noticed weakness when "curling her arm." *Id*. at 5. NP Arballo assessed her with left arm pain, noting that the pain persisted despite minor improvement. *Id*. He still thought it was related to tendinitis, and treated with oral diclofenac and a muscle relaxer. *Id*. He also referred her to a hand and shoulder specialist. Ex. 6 at 25.

Nearly four months later (May 1, 2020), Petitioner saw Dr. Dara Chafik for left shoulder pain. Ex. 7 at 7. Petitioner reported that her pain began on October 4, 2019 "immediately after a flu shot." *Id*. Initially the pain was "quite severe" and she could not move her arm at all. *Id*. With time it had improved, but she continued to treat with prednisone and diclofenac, with persisting nighttime pain. *Id*. She had a "feeling of impingement" with certain weight training movements. *Id*. On examination, she had full range of motion of her left shoulder, and slightly positive Hawkins and Neer's impingement signs. *Id*. She was diagnosed with left shoulder subacromial-based pain, which Dr. Chafik thought was "likely from deep injection of the flu shot." *Id*. at 8. Dr. Chafik offered a subacromial steroid injection or physical therapy, but Petitioner opted to hold off for the time being "because her symptoms [were] not severe." *Id*.

Petitioner thereafter obtained no medical treatment for over four months, or until September 28, 2020, when she saw NP Arballo for ear pain. Ex. 6 at 13. Left arm, shoulder, and forearm pain are listed in the "current problems" section of this record, but there is no other mention of left arm symptoms or treatment. *Id*. at 13-15. A couple of weeks later (October 9, 2020), Petitioner obtained another flu vaccine at the Patel Medical Clinic.[3] *Id*. at 16. The record again lists left arm, shoulder, and forearm pain in the "current problems" section, but does not indicate that any left arm symptoms or treatment were discussed or provided. *Id*. at 16-17. The "current problems" list for this visit also includes issues from her prior appointment such as unspecified otitis externa, left ear, and otalgia, left ear (Ex. 6 at 16), although there is no indication that any ear problems were reported or addressed at this visit. No further medical records have been filed.

### B. Affidavit

Petitioner submitted an affidavit (signed on April 1, 2021) in support of her claim. Ex. 2. She states that within ten minutes of receiving the October 4, 2019 flu vaccine, she felt "severe pain" in her left shoulder. Ex. 2 at ¶ 10. That night, she could not sleep due to the pain. *Id*. Initially she self-treated with Aleve, but when it wore off "the pain was severe." *Id*. Her shoulder pain was "unbearable, and it felt like my tendons and muscles were being torn apart." *Id*. When her severe pain persisted into November 2019, she realized that what she was experiencing was not routine post-vaccination soreness. *Id*.

When she saw her primary care provider, she received oral steroids and topical Diclofenac. Ex. 2 at ¶ 11. After taking these, her pain persisted, and an x-ray was done. *Id*. The x-ray did not show any signs of infection in her bone, and she was referred to a specialist. *Id*.

Dr. Chafik told her that he had seen similar conditions and that the pain was likely to continue for at least a year. Ex. 2 at ¶ 12. He offered a cortisone injection, which she declined because she was uncomfortable with it and thought it would only help temporarily. *Id*. She declined physical therapy because her insurance would not cover it

---

[3] Petitioner received a flu vaccine in her right deltoid during this visit. Ex. 6 at 17.

and she could not afford to pay out of pocket. *Id.* Instead, she researched and did physical therapy exercises at home. *Id.*

Petitioner states that during "the time-period following the vaccination," normal daily routines became "incredibly challenging and painful." Ex. 2 at ¶ 13. She could not lift more than a couple of pounds, and simple tasks such as working out and lifting her computer bag became difficult. *Id.* She was unable to do hobbies she loved such as working out and lifting weights. *Id.* at ¶ 14. Her work involves home visits and carrying a laptop, which had become painful. *Id.* Activities that were once normal, such as sleeping comfortably, lifting her arm, and carrying things, became "impossible." *Id.* at ¶ 15.

She reported trying many things "over the past year" – which presumably means 2020 to 2021 – to alleviate the pain. Ex. 2 at ¶ 16. She took Aleve, muscle relaxers, and oral steroids, and applied Diclofenac. *Id.* All had "minimal effectiveness and provided virtually no relief." *Id.* She had done home exercises, which had helped her range of motion, but she was still unable to lift much weight with her shoulder, and could not carry her purse or computer bag on her left shoulder without pain. *Id.*

As of the April 2021 signing of her affidavit, Petitioner stated that she continued to struggle with shoulder pain. Ex. 2 at ¶ 18. At worst, it felt like a "constant muscle spasm in my forearm or like there is a knotted ball in my shoulder and the pain is 8 out of 10." *Id.* Her shoulder movement had improved slightly, but she could not extend her shoulder or lift the way she did before her injury. *Id.* She explained that she was "physically and mentally tired from this experience." *Id.* at ¶ 19.

### III. Factual Findings and Ruling on Entitlement

#### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are

also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he or she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological

---

[4] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. Section 11(c)(1)(A)(B)(D)(E).

abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time-frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

### B. Parties' Arguments

Petitioner argues that the record supports a finding that she received a flu vaccine in her left shoulder, and that her SIRVA symptoms began within 48 hours thereafter. Petitioner's Motion for a Ruling on the Record and Brief in Support of Damages, filed June 22, 2022, at *11 (ECF No. 25) ("Mot."). She also references her testimony, which is corroborated by medical records, as establishing that her pain occurred immediately. Mot. at *11 (*citing* Exs. 3 at 7, 6 at 7, 7 at 7).

Respondent argues that Petitioner's claim of immediate severe pain is not supported by the medical records. Respondent's Rule 4(c) Report and Response, filed Jan. 6, 2023, at *6 (ECF No. 31) ("Resp."). The vaccination record makes no mention of immediate pain, and Petitioner did not seek treatment even within several weeks after vaccination. Resp. at *6. Respondent emphasizes the absence of mention of left shoulder pain during a routine physical on November 13, 2019.[5] *Id.* Respondent adds that when Petitioner first complained of shoulder pain (in December 2019, and then in January 2020), she reported pain that radiated from her shoulder down toward her upper arm.

---

[5] Respondent mistakenly argues that this physical took place 40 days after vaccination on November 13, 201*9*. Resp. at *6. But the record reveals that this examination took place on November 13, 201*8* – 11 months *before* vaccination. Ex. 3 at 10.

6

Resp. at *6-7. Thus, Respondent argues that her pain was not limited to her shoulder, and she cannot establish a Table SIRVA claim. *Id.* at *7.

Petitioner replies that her medical records support a finding that her pain began within 48 hours. Petitioner's Reply in Support of Petitioner's Motion for Ruling on the Record, filed Jan. 13, 2023, at *2 (ECF No. 32) ("Reply"). She argues that she consistently reported immediate pain, when she first sought treatment for the pain. Reply at *3-4. She also maintains that Respondent's argument about pain outside of her shoulder "is a narrow and distorted reading of the Vaccine Injury Table." Reply at *5. Petitioner argues that in adding SIRVA to the Table, the Secretary of Health and Human Services ("HHS") clarified that this language was necessary to compensate shoulder injuries from vaccine injections, rather than compensating back or neck pain that began *after* a vaccination but *without* any accompanying shoulder pain. *Id*. Petitioner thus argues that "HHS never intended to preclude compensation for valid SIRVA claims if the shoulder pain radiated into other parts of the body. *Id*. at *6 (*citing* National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, 82 Fed. Reg. 6294, 6296 (Jan. 19, 2017) (explaining that this criterion would mean that pain in the neck or back *without an injury to the shoulder* would not be considered SIRVA).

Petitioner also cites my decision in *Rodgers v. Sec'y of Health & Human Servs.*, No. 18-0559V, 2021 WL 4772097 (Fed. Cl. Spec. Mstr. Sept. 9, 2021), in which I stated that the third QAI "does not prevent a petitioner with simultaneous areas of pain due to unrelated conditions from also meeting the Table SIRVA definition." Reply at *7 (*citing Rodgers* at *8). Petitioner argues that Respondent "continues to treat the QAIs as exclusionary criteria rather than explanations to help pinpoint viable SIRVA injuries," and asserts that the QAI criteria "are intended to rule out other causes of symptoms that a Petitioner may complain about." *Id*. at *7-8. Alternatively, Petitioner argues that she has satisfied the criteria for an off-Table injury set forth in *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). *Id*. at *8.

### C. Onset

A preponderance of the evidence supports a finding that Petitioner's left shoulder pain began within 48 hours of vaccination. Petitioner first sought care for left shoulder pain on December 18, 2019, 75 days after vaccination. Ex. 3 at 7. At that appointment, she complained of left arm pain that had been present since her flu vaccination. *Id*. She was assessed with left arm pain that was "likely due to vaccine." *Id*. at 9. When she saw specialist Dr. Chafik in May 2020, she reported that her pain began on October 4, 2019 (the date of vaccination) "immediately after a flu shot." Ex. 7 at 7. And Petitioner stated in her affidavit that within ten minutes of vaccination she felt "severe pain" in her left shoulder. Ex. 2 at ¶ 10.

The sole record cited by Respondent in support of his onset argument is from 11 months *before* vaccination, and I find it is not relevant to the onset question. And the Vaccine Act does not require proof of onset *from within* the relevant onset timeframe

(even if such evidence would be especially probative). *See Brennan v. Sec'y of Health & Human Servs.*, No. 20-1844V, 2023 WL 7162365, at *7 (Fed. Cl. Spec. Mstr. Sept. 13, 2023) (requirement that Petitioner establish onset of pain within 48 hours "does *not* mean that a petitioner must be able to cite to a medical record *created* within the first 48 hours after vaccination") (emphases in original); *Wilkinson v. Sec'y of Health & Human Servs.*, No. 19-0733V, 2022 WL 444451, at *4 (Fed. Cl. Spec. Mstr. Jan. 14, 2022) (stating that "the Vaccine Act does not impose such a requirement" as requiring that a petitioner seek care within 48 hours); *Niemi v. Sec'y of Health & Human Servs.*, No. 19-1535V, 2021 WL 4146940, at *4 (Fed. Cl. Spec. Mstr. Aug. 10, 2021) ("the Vaccine Act clearly does *not* require that symptoms be recorded within a specific timeframe to be preponderantly established. Rather, it requires only that onset *occurs* in the relevant timeframe") (emphases in original).

### D. Pain Limited to Shoulder

In this case, Petitioner primarily experienced symptoms in her left shoulder, though she also complained of pain radiating to her upper arm and forearm. NP Arballo documented her pain as going "from what appears to be the biceps tendon . . . down toward her forearm" and radiating "from shoulder down towards upper arm." Ex. 3 at 4, 7. In other words, her treating provider viewed her pain as *originating* in her shoulder, though at times she also felt pain in adjacent areas.

I have previously explained that "claims involving musculoskeletal pain primarily occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body, since the essence of the claim is that a vaccine administered *to* the shoulder *primarily* caused pain there." *Cross v. Sec'y of Health & Human Servs.*, No. 19-1958V, 2023 WL 120783, at *7 (Fed. Cl. Spec. Mstr. Dec. 2, 2022) (emphasis in original); *see also K.P. v. Sec'y of Health & Human Servs.*, No. 19-0065V, 2022 WL 3226776, at *8 (Fed. Cl. Spec. Mstr. May 25, 2022). Determining whether the pain is predominant to the shoulder, or reflects a more systemic injury, is part of the balancing of evidence performed by special masters – and hence the fact that a claimant reports some radiating pain does not completely invalidate a Table SIRVA.

This reasoning is supported by other cases addressing this question. *See, e.g., Ervin-Spencer v. Sec'y of Health & Human Servs.*, No. 21-314V. 2023 WL 9231663 (Fed. Cl. Dec. 8, 2023) ("despite *some* notations of pain extending beyond the shoulder, Petitioner's injury is consistent with the definition of SIRVA and there is not preponderant evidence of another etiology) (emphasis in original); *Meagher v. Sec'y of Health & Human Servs.*, No. 18-1572V, 2023 WL 2582683, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) ("the third SIRVA criterion is intended to ensure that SIRVA claims are limited to instances in which '*the condition* is localized to the shoulder in which the vaccine was administered'") (emphasis in original); *Grossman v. Sec'y of Health & Human Servs.*, No. 18-0013V, 2022 WL 779666, at*15 (Fed. Cl. Spec. Mstr. Feb. 15, 2022) (interpreting the purpose of the third QAI as being "to guard against compensating claims involving patterns of pain or

8

reduced range of motion indicative of a contributing etiology beyond the confines of a musculoskeletal injury to the affected shoulder").

In this case, the record establishes that Petitioner primarily experienced a shoulder injury consistent with the definition of a SIRVA (although she also experienced symptoms in her upper arm and forearm), and there is not preponderant evidence of another etiology. I determine that this record is sufficient to satisfy the third SIRVA QAI criteria.

### E. Other SIRVA QAI Criteria

Respondent does not contest the remaining SIRVA QAI criteria, and I find that the record contains preponderant evidence that they are satisfied. Petitioner did not have a history of left arm pain or injury prior to vaccination that would explain her symptoms after vaccination, and no other condition or abnormality has been identified that would explain her post-vaccination symptoms. *See* Exs. 2, 3.

### F. Other Requirements for Entitlement

The record contains preponderant evidence that other requirements for entitlement are satisfied as well. Petitioner received a covered vaccine in the United States. Exs. 1 at 3; 2 at ¶ 6. She experienced the residual effects of her condition for more than six months. Ex. 7 at 7. She averred that neither she, nor any other party, has ever filed an action, or received compensation in the form of an award or settlement, for her vaccine-related injury. Ex. 2 at ¶ 8.

## IV. Damages

### A. Legal Standards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections V and VI of *Parsons v. Sec'y of Health & Human Servs.*, No. 19-1150V, 2023 WL 9060490, at *7-9 (Fed. Cl. Spec. Mstr. Nov. 30, 2023).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[6]

---

[6] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir.

### B. Parties' Arguments

Petitioner proposes an award of $85,000.00. Mot. at *22-23. In support, she cites *Young*, *Gentile*, *Dhanoa*, and *Weber*, in which the petitioners were awarded past pain and suffering awards of $100,000.00, $85,000.00, $85,000.00, and $85,000.00, respectively, with the *Gentile* and *Dhanoa* petitioners also receiving future pain and suffering awards.[7] *Id.* at 17-23. Petitioner argues that her affidavit testimony and medical records support a pain and suffering award comparable to these cases. She argues that her injury is comparable to these cases in that she has had continued pain for over two years after vaccination and had difficulty with daily activities including pain when lifting or carrying things, as did the petitioners in *Young*, *Dhanoa*, and *Weber*. *Id.* at *19. All petitioners in the cited cases treated with physical therapy, as did Petitioner,[8] and the *Dhanoa* petitioner and Ms. Valdez were both diagnosed with tendinitis and had injuries that interfered with their work. *Id.*

Petitioner also contends that Respondent has urged adoption of an "improper standard" for calculating pain and suffering, in which only medical record references are relevant. Mot. at *12. But while medical records are useful for corroborating and substantiating a petitioner's damages testimony, their primary purpose is not to record pain and suffering and emotional distress. *Id.* at *13. Thus, in Petitioner's view, medical records "simply do not tell the full story of a Petitioner's pain and suffering." *Id.* For instance, medical records often do not discuss ongoing losses of productivity at work, enjoyment of personal pursuits, lost time with family, or other concerns such as depression. *Id.*

Petitioner argues instead that where records are silent on a topic – especially when there is a good reason for this silence – Petitioner's testimony on such matters should not be subject to "the same dubious scrutiny" as a situation where testimony contradicts medical record. Mot. at *14. The Vaccine Act requires the court to consider the record as a whole, including testimony from Petitioner and others. *Id.* at *15. Thus, Petitioner asks that I weigh her testimony in the context of the record as a whole, including medical records. *Id.* at *16. Petitioner has endured "severe pain and suffering and will likely continue to experience pain and suffering into the indefinite future." *Id.*

---

1995)).

[7] *Young v. Sec'y of Health & Human Servs.*, No. 15-1241V, 2019 WL 396981 (Fed. Cl. Spec. Mstr. Jan. 4, 2019); *Gentile v. Sec'y of Health & Human Servs.*, No. 16-980V, 2020 WL 3618909 (Fed. Cl. Spec. Mstr. June 5, 2020); *Dhanoa v. Sec'y of Health & Human Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018); *Weber v. Sec'y of Health & Human Servs.*, No. 17-399V, 2019 WL 2521540 (Fed. Cl. Spec. Mstr. Apr. 9, 2019).

[8] Neither the record nor Petitioner's motion suggest that Petitioner attended formal physical therapy. Thus, I presume that Petitioner refers to physical therapy exercises that she researched and did at home on her own. Mot. at *7.

10

Respondent objects to prematurely briefing damages before entitlement is resolved, and argues that damages should not be awarded at all. Resp. at *7. However, if I award damages, Respondent contends that the award should not exceed $32,000.00, noting that this is a non-surgical SIRVA with "very limited medical treatment." *Id.* at *7-8, 9. Petitioner did not undergo surgery or physical therapy, and declined a steroid injection because her pain was not severe. *Id.* She also delayed care for more than two months post-vaccination, undermining her claims of immediate and severe pain. *Id.*

Respondent cites *Ramos* and *Mejias*, in which the petitioners were awarded $40,000.00 and $45,000.00, respectively, in support of his proposed award.[9] Resp. at *9-11. In Respondent's view, Ms. Valdez had even less treatment than the *Ramos* petitioner, who treated until over a year after vaccination and attended four occupational therapy and several physical therapy sessions. *Id.* at *10. Respondent emphasizes that the *Mejias* petitioner presented to urgent care for treatment just two days after vaccination, compared to 75 days after vaccination for Ms. Valdez. *Id.* at *10-11.

Respondent also distinguishes the cases Petitioner cites, asserting that *Young* involved a petitioner who completed over 50 physical therapy sessions during a two-year period, compared to Ms. Valdez who declined PT and had only three medical visits, the last of which was just seven months after vaccination. Resp. at *11-12. Respondent argues that the *Gentile* petitioner underwent 19 physical therapy sessions, three steroid injections, and received medical treatment for over three years after vaccination – compared to this case involving no formal physical therapy, no steroid injections, and a limited duration of pain as corroborated by medical records. *Id.* at *12. Similarly, Respondent argues that the *Dhanoa* and *Weber* petitioners underwent treatment for two and a half and two years, respectively, involving physical therapy, steroid injections, and more and are not analogous to this case. *Id.* at *12-14.

Petitioner replies that Respondent's cited cases are not analogous to her case. Reply at *9. Petitioner states that the *Ramos* petitioner waited four months to seek care for his arm pain. *Id.* Petitioner emphasizes an eight-month gap in care in *Mejias* and argues that the *Mejias* petitioner's formal treatment was "very conservative, including a lidocaine patch" along with medication. *Id.* at *10. Petitioner argues that unlike the petitioners in *Ramos* or *Mejias*, she had "residual symptoms that were limiting her ability to function and causing pain over a year post-vaccination," citing the October 9, 2020 record. *Id.*

Petitioner's reply cites two additional cases, *Boyd* and *Accetta*, in which the petitioners received pain and suffering awards of $80,000.00 and $95,000.00,

---

[9] *Ramos v. Sec'y of Health & Human Servs.*, No. 18-1005, 2021 WL 688576 (Fed. Cl. Spec. Mstr. Jan. 4, 2021); *Mejias v. Sec'y of Health & Human Servs.*, No. 19-1944V, 2021 WL 5895622 (Fed. Cl. Spec. Mstr. Nov. 10, 2021).

respectively.[10] Reply at *11-12. Petitioner argues that she first sought care sooner than the *Accetta* petitioner, and her treatment was similar to both the *Boyd* and *Accetta* petitioners in that "none of the petitioners opted to have cortisone injections, and rather treated with other options." *Id.* at *13. Petitioner asserts that like the *Boyd* petitioner, she performed physical therapy exercises at home to save money. *Id.*

### C. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the medical records and affidavits filed and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

Petitioner's last medical treatment for her injury occurred just under seven months after vaccination, when she saw Dr. Chafik on May 1, 2020. At that point, she reported that her pain had improved with time, and she had full range of motion and slightly positive impingement signs. Ex. 7 at 7. Petitioner declined a steroid injection and physical therapy "because her symptoms [were] not severe." *Id.* at 8.

While the records of Petitioner's September and October 2020 appointments for other concerns list left arm, shoulder, and forearm pain in the "current problems" section of the record, there is no mention of symptoms or treatment related to her shoulder, or any other mention of her shoulder. Ex. 6 at 13-17. Thus, these records do not support a finding that her shoulder pain continued to require treatment at this time.

At bottom, Petitioner's injury was relatively minor for a SIRVA, and on the milder end in terms of duration and treatment. I acknowledge Petitioner's explanation that she did not seek formal physical therapy for financial reasons, though it was recommended. Still, Petitioner sought formal care only three times, with the last being just seven months after vaccination.

Petitioner correctly maintains that pain and suffering calculations should not be based solely on the medical records. But they are nevertheless highly relevant to that analysis. Medical records are created contemporaneous to most of the treatment events they describe. While they are not created for the purpose of documenting pain and suffering, the fact that a person sought – or did not seek – medical treatment for an injury provides useful information about the extent and severity of the injury, and the impact it

---

[10] *Boyd v. Sec'y of Health & Human Servs.*, No. 19-1107V, 2021 WL 4165160 (Fed. Cl. Spec. Mstr. Aug. 12, 2021); *Accetta v. Sec'y of Health & Human Servs.*, No. 17-1731V, 2021 WL 1718202 (Fed. Cl. Spec. Mstr. Mar. 31, 2021).

is having on their life.

At the same time, witness statements also bear on pain and suffering. And I find that Petitioner's affidavit testimony provides useful, subjective information about Petitioner's shoulder pain and how it impacted her life. However, that document was signed a year and a half after vaccination, and 11 months after her last treatment for her shoulder pain, and the claim that her pain persisted at that time is uncorroborated by other evidence. I find that the record does not demonstrate that it is more likely than not that Petitioner's shoulder pain continued much, if any, beyond seven months.

The cases Petitioner cites are not comparable. They involve injuries of significantly longer duration, from 29 months to four years or more. Further, the petitioner in all of Petitioner's cases received formal PT, and all but one received at least one steroid injection. Although the *Boyd* petitioner did home exercises, she also attended 19 sessions of formal PT. *Boyd*, 2021 WL 4165160, at *4-5.

Of the cited cases, I find that Petitioner's injury is most similar to *Mejias*. In *Mejias*, the petitioner sought care two days after vaccination, and again eight days later. *Mejias*, 2021 WL 5895622 at *3. Thereafter, he did not seek care for shoulder pain again until eight months later. *Id.* at *4. The *Mejias* petitioner last sought care ten months after vaccination and did not receive any steroid injections or formal PT, though both were offered. *Id.* Thus, Ms. Valdez and the petitioner in *Mejias* underwent similar treatment. However, the overall duration in *Mejias* was a few months longer and that petitioner sought care sooner after vaccination – suggesting a somewhat longer duration and greater initial pain. Thus, the overall mix of factors suggest and support a lower amount. I award Ms. Valdez $35,000.00 in pain and suffering.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I GRANT Petitioner's motion for a ruling on the record and find that Petitioner's left shoulder injury meets the definition for a Table SIRVA and she is entitled to compensation in this case.**

**Furthermore, I find that $35,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[11] I award Petitioner a lump sum payment of $35,000.00 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

---

[11] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

13

The Clerk of Court is directed to enter judgment in accordance with this Decision.[12]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.